IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |  | |
|---|---|---|---|
| OLGA MARY LANSING, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | 1:10cv1305(JCC/IDD) | |
| | ) | | |
| JOHN McHUGH, | ) | | |
| Secretary of the Army, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant the United States'[1] (the "United States" or the "Defendant") Motion to Dismiss (the "Motion"). [Dkt. 5.] For the following reasons, the Court will grant Defendant's Motion.

**I.  Background**

A.  Factual Background

On September 18, 2009, around 9:30 a.m., while driving into the Buckner gate entrance of the United States Army (the "Army") facility Fort Shafter, Hawaii, Plaintiff drove her car into a two-foot tall security wall. (Complaint [Dkt. 1] ("Compl.") at 1.) According to Plaintiff, the accident resulted in nearly $12,000 in damage to her vehicle and life-long health damage, namely whiplash. (Compl. at 1.) Plaintiff alleges that

---

[1] Plaintiff names John McHugh, Secretary of the Army, as defendant, but the United States is the appropriate defendant in claims filed pursuant to the Federal Tort Claims Act.  *See* 28 U.S.C. § 2679.

1

in creating the security bypass, the "Public Works failed to provide for safe passage[,]" by failing "to clear the pavement and obstructing walls." (Compl. at 1.) Plaintiff further alleges that since her accident, the wall has been demolished, the road repaved, and the landscape surrounding the site changed. (Compl. at 1.) Plaintiff seeks $120,000 in damages. (Compl. at 1.)

B.  Procedural Background

Plaintiff filed her Complaint on November 18, 2010, alleging "wrongful" acts and "fail[ure] to provide safe passage" on the part of the United States, which resulted in damage to her vehicle and personal injuries, *i.e.*, an action in tort against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (the "FTCA"). [Dkt. 1.]

On January 18, 2011, the United States filed its Motion to Dismiss. [Dkt. 5.] The Motion was accompanied by the proper notice required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K). [Dkt. 7.] Plaintiff filed her opposition, styled a "Motion to Reinstate," on January 31, 2011. [Dkt. 9, 9-1.] The United States replied in support on February 3, 2011, [Dkt. 10], and Plaintiff filed a rebuttal on February 8, 2011, [Dkt. 11, 11-1], and a supplement thereto on February 11, 2011, [Dkt. 12]. Defendant's Motion to Dismiss is now before the Court.

## II. Standard of Review

A. <u>Jurisdiction</u>

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways. First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002). In such instances, all facts alleged in the complaint are presumed to be true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995). Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue. *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780. In that situation, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994); *Velasco v. Gov't of Indonesia,* 370 F.3d 393, 398 (4th Cir. 2004) (holding that "the district court may regard the

3

pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment"). In either circumstance, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219; *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (holding that "having filed this suit and thereby seeking to invoke the jurisdiction of the Court, Plaintiff bears the burden of proving that this Court has subject matter jurisdiction").

  B. <u>The FTCA</u>

  The FTCA creates a limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, in instances where a private person would be liable for such conduct under state law. *See* 28 U.S.C.A. § 1346(b)(1). The FTCA's waiver of sovereign immunity, however, is subject to certain exceptions. *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006). "'The most important of these . . . is the discretionary function exception,' *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004) (en banc), cert. denied, 544 U.S. 974 (2005), which provides that the United States is not liable for '[a]ny claim . . . based upon the exercise or performance or the

failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused,' 28 U.S.C. § 2680(a)." *Suter*, 441 F.3d at 310. As a "waiver of sovereign immunity, the FTCA is strictly construed, and all ambiguities are resolved in favor of the United States." *Williams v. United States*, 50 F.3d 299, 305 (4th Cir. 1995)

When a case falls within an exception to the FTCA, the federal courts lack jurisdiction to hear the case. *Williams*, 50 F.3d at 304-05 (stating that "if the discretionary function exception applies to limit the waiver of sovereign immunity, the jurisdictional grant is not available, and the federal court lacks jurisdiction to hear the case"). "[T]he proper practice is to dismiss for want of jurisdiction for purposes of the FTCA under Rule 12(b)(1), not to grant summary judgment under Rule 56(c)." *Williams*, 50 F.3d at 304 (citation omitted). "If the challenged conduct is of the nature Congress intended to shield from suit under the discretionary function, the Court lacks subject matter jurisdiction *even if the suit is based on alleged negligence* by government employees." *Hostetler v. United States*, 97 F. Supp. 2d 691, 696 (E.D. Va. 2000) (emphasis added).

5

C.  *Pro Se* Plaintiff

The Court construes the *pro se* Complaint in this case more liberally than those drafted by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Khozam v. LSAA, Inc.*, No. 3:06cv298, 2007 WL 2932817 (W.D.N.C. Oct. 5, 2007).  Further, the Court is aware that "[h]owever inartfully pleaded by a *pro se* plaintiff, allegations are sufficient to call for an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief."  *Thompson v. Echols*, No. 99-6304, 1999 WL 717280, at *1 (4th Cir. Sept. 15, 1999) (citing *Cruz v. Beto,* 405 U.S. 319 (1972)).  Nevertheless, while *pro se* litigants cannot "be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).  Thus, even in cases involving *pro se* litigants, as here, the Court "cannot be expected to construct full blown claims from sentence fragments."  *Id.* at 1278.

### III.  Analysis

A.  The Discretionary Function Exception

Defendant argues that, because the discretionary function exception protects the United States from liability for

6

Plaintiff's alleged injuries, the United States has not waived sovereign immunity, and, thus, this Court lacks jurisdiction. (Mem. at 5-6.) Plaintiff argues that the "true facts . . . override any FTCA discretionary function exception." (Plaintiff's Rebuttal to Defendant's Reply [Dkt. 11, 11-1] ("Reb.") at 1.) The issue, then, is whether the discretionary function exception to the FTCA applies in this case.

The discretionary function exception provides that the United States is not liable for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Courts apply a two-part test in determining whether the FTCA's discretionary function exception shields the United States from suit. First, "[t]o determine whether conduct by a federal agency or employee fits within the discretionary function exception, [a court] must first decide whether the challenged conduct 'involves an element of judgment or choice.'" *Suter*, 441 F.3d at 310 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). This first "inquiry boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum v. United States*, 986 F.2d 716, 720

(4th Cir. 1993).  If so, "then the conduct involves no legitimate element of judgment or choice and the function in question cannot be said to be discretionary."  *Id*.  If the function cannot be said to be discretionary, then "the government actor 'has no rightful option but to adhere to the directive,' and if the plaintiff can show that the actor in fact failed to so adhere to a mandatory standard, then the claim does not fall within the discretionary function exception."  *Id*. (quoting *Berkovitz*, 486 U.S. at 530).

Second, if the challenged government conduct is not "the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action," *id*., then a court "must determine 'whether that judgment is of the kind that the discretionary function exception was designed to shield,' *i.e.*, whether the challenged action is 'based on considerations of public policy.'"  *Suter*, 441 F.3d at 311 (quoting *Berkovitz*, 486 U.S. at 536-37).  This second "inquiry focuses 'not on the agent's subjective intent in exercising the discretion . . ., but on the nature of the actions taken and on whether they are susceptible to policy analysis.'"  *Id*. (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).  Therefore, "a reviewing court in the usual case is to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to

8

be grounded in considerations of policy." *Baum*, 986 F.2d at 720-
21. "Moreover, when a statute, regulation, or agency guideline
permits a government agent to exercise discretion, 'it must be
presumed that the agent's acts are grounded in policy when
exercising that discretion.'" *Suter*, 441 F.3d at 311 (quoting
*Gaubert*, 499 U.S. at 324).

Here, the conduct at issue falls within the
discretionary function exception, which, thus, shields the
United States from suit in this case. First, with respect to
whether the challenged conduct involved an element of judgment
or choice, the conduct Plaintiff challenges is the Army's design
and construction of the security checkpoint and bypass at the
Buckner gate. (Compl. at 1 ("Bypass at Buckner gate of Ft.
Shafter was hastily created, buildings were razed [and] the
ground obstructions were not removed as curbs and a 2' wall
which protruded into the uphill path at exiting.").) Army
regulations and training manuals provide general guidance on
threat assessments, security control measures, access control
procedures, use of materials and natural resources, and other
factors affecting the construction of security checkpoints and
installation entrances. (D. Ex. 1[2] at 4-5 (Declaration ("Decl."
of Colonel Matthew Margotta ¶¶ 9-11).) These regulations and
training materials are not mandatory and leave the details of

---

[2] Exhibits to Defendant's Memorandum, in Support [Dkt. 6-1] will be referred
to as "D. Ex. []."

9

implementation to the garrison commander, who at the relevant time was Colonel Matthew Margotta (the "Base Commander"). (D. Ex. 1 at 4-5 (Decl. of Colonel Matthew Margotta ¶¶ 1, 9-11).) Thus, the design, location, and construction of the bypass at the Buckner gate was not "the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum*, 986 F.2d at 720. Because no mandatory statute, regulation, or specific policy dictated the location and construction of the bypass, it "involve[d] an element of judgment or choice,'" *Suter*, 441 F.3d at 310, and, accordingly, the first prong of the discretionary function standard is satisfied.

Second, with respect to whether the challenged conduct is based on considerations of public policy, the United States argues that the "decisions made regarding the location and operation of the security checkpoint and the incorporation of the curb wall were clearly grounded in government policy to create the most efficient and safe checkpoint and traffic flow within the limited space, personnel resources, and economic resources at the Base Commander's disposal." (Mem. at 12-13.) The Fourth Circuit has stated "discretionary acts deserving of immunity are not limited to policymaking or planning decisions; day-to-day management can also involve discretionary choices grounded in regulatory policy. It is now settled that the day-

to-day operational decisions of government are entitled to immunity under the FTCA so long as the choices are 'susceptible to policy analysis.'" *Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002) (quoting *Gaubert*, 499 U.S. at 325)). The Fourth Circuit's *Baum* decision is particularly instructive:

> The decision of how and when to replace a major element of a substantial public facility is, like the decisions involving design and construction, at bottom a question of how best to allocate resources. Such a decision is inherently bound up in considerations of economic and political policy, and accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages.

*Baum*, 986 F.2d at 724. Here, as in *Baum*, the decision of how and where to construct the bypass security checkpoint was "inherently bound up in considerations of economic and political policy." *Id*. In short, in deciding where, how, and in what form to construct the security checkpoint, the Base Commander was implementing policy. He balanced various governmental considerations in making his decision, including efficiency in the traffic flow entering the base, safety for that traffic flow, economic concerns with respect to construction, and, significantly, the security of the base. (D. Ex. 1 at 2-5 (Decl. of Colonel Matthew Margotta ¶¶ 3-4, 7, 9, 11).) Because "decisions involving design and construction, at bottom [are] a question of how best to allocate resources," *Baum*, 986 F.2d at

724, and because the decisions at issue here involved a balancing of various policy considerations, the challenged conduct is based on considerations of public policy, and the second prong of the discretionary function standard is satisfied. As a result, this Court finds that it has no subject matter jurisdiction over this action and must dismiss it accordingly.

> B. Plaintiff's Arguments

Plaintiff's arguments in opposition to Defendant's Motion to Dismiss ultimately allege only that, because the United States was negligent in installing and maintaining the wall into which she crashed her car, the Court should exercise jurisdiction over this case. Because the Court finds that the conduct at issue falls with the discretionary function exception, however, the United States "is immune from any claim, 'however negligently caused, that affect[s] the governmental functions.'" *Smith*, 290 F.3d at 207 (quoting *Dalehite v. United States*, 346 U.S. 15, 32 (1953)). Plaintiff also alleges that "there are explicit Army Safety regulations, [but that the Base Commander] does not have internal procedures to implement the regulations and continue[s] to operate in a lax modus operandi." (Plaintiff's Supplement [Dkt. 12] ("Supp.") at 2.) Plaintiff does not identify any such alleged regulations. Moreover, again, whether the United States was negligent in this case does

not affect whether this Court has jurisdiction.  Plaintiff also asserts at various points that the United States has manipulated evidence, that the United States removed the wall that she hit, that the wall that she hit was two feet tall, and that the copy of the accident report offered by the United States as an exhibit has omitted the words "did not see" from the sentence "I tried to proceed cautiously, and simply misjudged the [*did not see*] wall presence."  (Plaintiff's "Motion to Reinstate" in Opposition [Dkt. 9, 9-1] at 2-3, 10-11 (emphasis and bracketed text added).)  The United States flatly denies these assertions.  (Defendant's Reply [Dkt. 10] at 3-4.)  Even assuming, only for the sake of argument, the veracity of Plaintiff's assertions, they have no bearing on the question of whether the discretionary function exception bars a suit against the United States in this matter and, thus, whether this Court has jurisdiction over this case.

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion to Dismiss.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| March 8, 2011 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

13